**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Angela Wahab, individually and<br>on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br><br>White's Boots, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 1:23-cv-09018-JHR

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT WHITE'S BOOTS, INC.'S**
**MOTION TO DISMISS**

**STEIN SAKS, PLLC**

*/s/ Kenneth Willard*
Kenneth Willard, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
kwillard@steinsakslegal.com

## <u>TABLE OF CONTENTS</u>

Table of Authorities …………………………………………………...... iii

I.    Introduction ……………………………………………..…….. 1

II.   Factual Background …………………………………………... 1

III.  Standard of Review ……………………………………………… 3

IV.  Legal Argument …………………………………………………… 4

    A.    DEFENDANT HAS FAILED TO MEET ITS HIGH BURDEN IN ESTABLISHING THAT PLAINTIFF'S CLAIMS ARE MOOT …………………………………………………… 4

    B.    PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE WEBSITE AND HER INTEREST IN RETURNING ESTABLISH INJURY-IN-FACT ………………………….. 10

        i.    Article III Standing in the Context of the ADA …………. 10

        ii.   Plaintiff Has Adequately Alleged Past Injury …………… 11

        iii.  Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue ……………….. 14

        iv.   Plaintiff Has Established Intent to Return, the Third and Final *Kreisler* Element …………………………….…... 17

    C.    PLAINTIFF'S NYCHRL CLAIMS SURVIVE ……………..... 25

V.    CONCLUSION …………………………………………………. 25

**Table of Authorities**

**Supreme Court Opinions**

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130 (1992) ............................................. 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .................................................................. 11

**U.S. Constitution**

Article III of the U.S. Constitution ...................................................... 10

**Second Circuit Opinions**

*Am. Council of the Blind of N.Y., Inc. v. City of N.Y.*,
   495 F. Supp. 3d 211 (S.D.N.Y. 2020) ............................................ 10

*Angeles v. Grace Prods.*, No. 20-cv-10167
   (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sep. 23, 2021) ........... 11, 12, 17-18, 20, 21

*Bautz v. ARS Nat'l Servs.*,
   226 F. Supp. 3d 131 (E.D.N.Y. 2016) ............................................. 10

*Brown v. Mermaid Plaza Assocs. LLC*, No. 13-cv-00760
   (AMD) (CLP), 2018 U.S. Dist. LEXIS 132364 (E.D.N.Y. Mar. 8, 2018) .................... 13-14

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ........................................... 16, 17, 19, 23

*Camacho v. Vanderbilt Univ.*,
   2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ...................... 12

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ........................................................... 3

*Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178
   (CM), 2022 U.S. Dist. LEXIS 211816 (S.D.N.Y. Nov. 22, 2022) ................... 12-13, 18, 20

*Comer v. Cisneros*,
   37 F.3d 775 (2d Cir. 1994) ........................................................... 8

*Cooper v. U.S. Postal Serv.*,
   577 F.3d 479 (2d Cir. 2009) ......................................................... 11

*Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244
   (LJL), 2023 U.S. Dist. LEXIS 115542
   (S.D.N.Y. July 5, 2023) ........................... 14, 15, 15-16, 18, 20, 21, 23-24, 24-25

*Dawkins v. Schott NYC Corp.*, No. 22-CV-3617
   (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 (E.D.N.Y. Sep. 26, 2023) ........... 21, 22, 23

*De La Rosa v. 600 Broadway Partners, LLC*,

175 F. Supp. 3d 191 (S.D.N.Y. 2016) ............................................................................ 8, 10

*Diaz v. Kroger Co.*,
2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019)(v) ............................................ 6, 7

*Donet v. Isamax Snacks, Inc.*, *No. 1:23-cv-01286*
*(PAE) (SDA), 2023 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 14, 2023)* ....................... 13

*Farez-Espinoza v. Napolitano*,
2009 U.S. Dist. LEXIS 35392 (S.D.N.Y. Apr. 27, 2009) .................................. 6, 7, 9, 16

*Gropper v. Fine Arts Hous., Inc.*,
12 F. Supp. 3d 664 (S.D.N.Y. 2014) ............................................................................ 8, 9

*Guglielmo v. Neb. Furniture Mart, Inc.*,
2020 U.S. Dist. LEXIS 238707 (S.D.N.Y. Dec. 18, 2020) ................................................. 6

*Hecht v. Magnanni Inc.*, *No. 1:20-cv-05316*
*(MKV), 2022 U.S. Dist. LEXIS 60836 (S.D.N.Y. Mar. 31, 2022)* ............................... 4, 5

*J.S. ex rel. N.S. v. Attica Central Schools*,
386 F.3d 107 (2d Cir. 2004) .............................................................................................. 4

*Jobie O. v. Spitzer*,
2007 U.S. Dist. LEXIS 91460 (S.D.N.Y. Dec. 5, 2007) ..................................................... 8

*Kane v. Blueprint Test Preparation LLC*, *No. CV 19-3024*
*(SJF) (AKT), 2020 U.S. Dist. LEXIS 155358 (E.D.N.Y. Aug. 24, 2020)* ........................... 6

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017) .............................................................................................. 3

*Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184 (2d Cir. 2013) ............................................................................................ 11

*Laufer v. Laxmi & Sons, LLC*, *No. 1:*
*19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752 (N.D.N.Y. Nov. 19, 2020)* ...... 11

*Loadholt v. ShirtSpace*, *No. 22-CV-02870*
*(ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar. 6, 2023)* ..................................... 18

*Logerfo v. Cty. of Nassau*, *No. 17-cv-00010*
*(JMA) (AYS), 2021 U.S. Dist. LEXIS 269440 (E.D.N.Y. Mar. 11, 2021)* ....................... 10

*Maddy v. Life Time, Inc.*, *No. 22-cv-5007*
*(LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July 5, 2023)* ........................... 18, 20, 24

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .............................................................................................. 3

*Oparaji v. Mun. Credit Union*, *No. 19-CV-4034*
*(JPC)(SN), 2020 U.S. Dist. LEXIS 242211 (S.D.N.Y. Dec. 21, 2020)* ......................... 3-4, 4

*Panerese v. Shiekh Shoes, LLC*, *No. 19-CV-4061*

(JMA) (AYS), 2020 U.S. Dist. LEXIS 224369 (E.D.N.Y. Dec. 1, 2020) .......................................... 7-8

*Samele v. Zucker*,
   324 F. Supp. 3d 313 (E.D.N.Y. 2018) ............................................................................... 16

*Sanchez v. NutCo, Inc.*, No. 20-CV-10107
   (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) ......................... 15, 17, 19

*Tavarez v. Moo Organic Chocolates, LLC*,
   641 F. Supp. 3d 76 (S.D.N.Y. 2022) ......................... 13, 15, 17, 20, 21, 23, 24

*Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115
   (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) ......................... 12

*Winegard v. Golftec Intellectual Prop. LLC*, No. 23-cv-1244
   (BMC), 2023 U.S. Dist. LEXIS 92840 (E.D.N.Y. May 26, 2023) .................................... 21

**Federal Court Opinions**

*Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU,
   2015 U.S. Dist. LEXIS 188271 (S.D. Fla. Nov. 20, 2015) ................................................ 5

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019) ............................................................................................ 7

**United States Code**

42 U.S.C. § 12182 ........................................................................................................... 1

**State Cases**

*Cabrera v. City of N.Y.*,
   2014 NY Slip Op 30533(U) (Sup. Ct.) ............................................................................ 25

*Pustilnik v. Battery Park City Auth.*,
   2021 NY Slip Op 21087, 71 Misc. 3d 1058, 147 N.Y.S.3d 357 (Sup. Ct.) ...................... 25

*Vig v NY Hairspray Co., L.P.*,
   67 AD3d 140, 885 N.Y.S.2d 74 [1st Dept 2009] ............................................................ 25

*Williams v New York City Hous. Auth.*,
   61 AD3d 62, 872 N.Y.S.2d 27 [1st Dept 2009] .............................................................. 25

**Rules**

Rule 8 ........................................................................................................................... 13

Rule 12 .................................................................................................................... 1, 2, 3

**Other**

N.Y.C. Admin. Code § 8-101 ........................................................................................... 1

## I.     <u>INTRODUCTION</u>

Plaintiff Angela Wahab ("Wahab") brings her claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  Defendant White's Boots, Inc. ("White's Boots") moves to dismiss these claims under Rule 12(b)(1) of Fed. R. Civ. P. Defendant argues that Plaintiff has failed to establish Article III standing and that Plaintiff's claims are mooted, on the basis of a declaration from Defendant averring that the declarant, a visually impaired person, had no trouble using the website, www.whitesboots.com (the "Website"), and an as-yet unproduced video showing same.  As will be discussed below, these arguments have no merit.

Plaintiff has clearly alleged the basis for her interest in the product at issue, Women's Line Scout Lace-to-Toe" boots, going into detail about her past purchasing habits, the quality of the footwear offered by Defendant on its Website, and the genesis of her need for the footwear, seasonal cold weather.  Moreover, the declaration provided by Defendant proves nothing other than that the Website might be blind-user friendly today.  It says nothing about the remediation steps Defendant took to bring the Website into compliance with the ADA, what standards were used, and Defendant's commitment to future compliance.  It therefore fails to meet the high bar for mootness in the Second Circuit, and falls squarely under the voluntary cessation doctrine.

## II.     <u>FACTUAL BACKGROUND</u>

Plaintiff is a blind and visually impaired person who must use screen reader technology to navigate websites and is proficient in the use of NVDA screen readers.  Dkt. # 1, ¶¶ 17, 40.  Defendant owns and operates the Website which is an online retailer for high-quality, handcrafted boots.  *Id.* at ¶¶ 18, 23, 24.

Plaintiff found the Website through a Google search. Dkt. # 1, ¶ 23. Plaintiff was interested in purchasing "Women's Line Scout Lace-to-Toe" boots because she "was looking for leather boots for the cold season" and she was specifically interested in finding "handcrafted boots from natural materials, as her previous pairs of the same type were very comfortable and durable." *Id.* at ¶¶ 21, 22. Plaintiff found the Website particularly appealing because it offers "a rich collection of work boots, hiking boots, fire boots, made from fine leather and hardwoods" and Defendant "is renowned for craftsmanship, durability, and attention to detail." *Id.* at ¶ 24. The "Line Scout Lace-to-Toe" boots and the Website fit the bill. *See Id.* at ¶¶ 21-24.

Unfortunately, on September 28, 2023 and September 30, 2023, when Plaintiff visited the Website, she was unable to complete a purchase of the Women's Line Scout Lace-to-Toe boots because of the difficulties Plaintiff encountered in navigating the Website with her NVDA screen reader. Dkt. # 1, ¶¶ 20, 25. Defendant's failure to build and maintain the Website in a manner compliant with the ADA directly led to injuries sustained by Plaintiff as a result of this discrimination. *Id.* at ¶ 26.

Plaintiff's specific injuries came about as a result of the access barriers she encountered on the Website. Dkt. # 1, ¶¶ 26, 27, 28, 29, 42, 43. These access barriers include "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," in addition to "a host of broken hyperlinks," which prevented Plaintiff from freely navigating back to the live Website after reaching a dead end on the information superhighway. *Id.* at ¶¶ 43, 44. These access barriers prevented Plaintiff from using the Website as sighted users do, and specifically prevented Plaintiff from completing a purchase of Women's Line Scout Lace-to-Toe

boots.  *Id.* at ¶¶ 25, 45.  If and when the Website is remediated, Plaintiff intends to return to the Website to complete a purchase of Women's Line Scout Lace-to-Toe boots.  Dkt. # 1, ¶ 30.

## III.  <u>STANDARD OF REVIEW</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)(citing Fed. R. Civ. P. 12(b)(1)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113.  The Second Circuit draws a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial challenges and fact-based challenges.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 119 (2d Cir. 2017).  A facial challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d at 56.  Under a facial challenge, a plaintiff must "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  822 F.3d at 56.  In order to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57 (citation omitted).

By contrast, a factual challenge – challenging the actual fact of the court's jurisdiction through the introduction of extrinsic evidence – "does not presume the truth of the plaintiff's claims of jurisdiction, 'rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts.'"  *Oparaji v. Mun. Credit Union*, No. 19-CV-4034 (JPC)(SN), 2020 U.S. Dist. LEXIS 242211, at *6 (S.D.N.Y. Dec. 21, 2020)(quoting *Guadagno v. Wallack Ader*

*Leviathan Assoc.'s*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), *aff'd* 125 F.3d 844 (2d Cir. 1997))[1].

Although a court may consider extrinsic evidence in determining the fact of its own jurisdiction,

the court "may not rely on conclusory … statements contained in the affidavits." *J.S. ex rel. N.S.*

*v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

## IV.    LEGAL ARGUMENT

### A.    DEFENDANT HAS FAILED TO MEET ITS HIGH BURDEN IN ESTABLISHING THAT PLAINTIFF'S CLAIMS ARE MOOT

Defendant argues that Plaintiff's claims are moot on the basis of a video (as yet

unproduced) and Declaration from Robert Kingett, who is blind and uses a screen reader. *See* Dkt.

# 10-1, ⁋⁋ 2, 3. Mr. Kingett avers that he was hired by Defendant to conduct a review of the

Website, that he was able to navigate the Website proficiently using NVDA screen reader software,

and that he was able to purchase the Women's Line Scout Lace-to-Toe boots. *Id.* at ⁋⁋ 4, 5. Mr.

Kingett avers that he had no trouble learning about the product specifications of the Women's Line

Scout Lace-to-Toe boots and was able to access other aspects of the Website and navigate it freely

using NVDA. *Id.* at ⁋ 6. According to Mr. Kingett, the Website is therefore accessible to the

visually impaired. *Id.* at ⁋ 9.

"It is black-letter law that a 'voluntary cessation of challenged conduct does not ordinarily

render a case moot.'" *Hecht v. Magnanni Inc.*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS

60836, at *8 (S.D.N.Y. Mar. 31, 2022)(quoting *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567

U.S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012))(citing *Already, LLC v. Nike, Inc.*, 568

U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)). "Rather, Plaintiff's request for injunctive

relief under the ADA will only be deemed moot if the Defendant meets the 'formidable burden'

---

[1] Defendant mischaracterizes the standard on a factual attack as prohibiting the assumption of truth of *all* factual allegations. Clearly, that limitation only applies to claims of jurisdiction in the Complaint. *See Oparaji*, No. 19-CV-4034 (JPC)(SN), 2020 U.S. Dist. LEXIS 242211 at *6.

of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Hecht*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS 60836 at *8-9.

Here, Mr. Kingett's Declaration is woefully inadequate in meeting the high burden for mootness. While Mr. Kingett does aver that he could freely navigate the Website using an NVDA screen reader and that he was able to complete a purchase of the Women's Line Scout Lace-to-Toe boots, no mention is made of Mr. Kingett's qualifications in conducting ADA-compliance audits of websites in general. Mr. Kingett does not hold himself out as a third-party vendor specializing in remediation of ADA websites, or even, for that matter, an employee of Defendant who was hired for his specialized expertise in the area of ADA compliance. He is not an expert on ADA compliance, and does not purport to be one. The sole basis for Mr. Kingett's expertise is apparently that he "use[s] screen reader technology in [his] daily life." *See* Dkt. # 10-1, ¶ 3.

Although he openly questions Plaintiff's competency in using an NVDA screen reader based on his own personal review of the Website, *see* Dkt. # 10-1, ¶ 10, based on the Declaration provided, Mr. Kingett is otherwise completely unqualified to provide a professional assessment of whether the Website is compliant with WCAG 2.1 guidelines. *See Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU, 2015 U.S. Dist. LEXIS 188271, at *6 (S.D. Fla. Nov. 20, 2015)("Moreover, Defendant's president is not an expert on ADA-compliance, and her photographs of the facility, although persuasive, do not definitively demonstrate that the facility is actually ADA-compliant. Therefore, it is not clear that this action is moot.").

Moreover, nothing is said of what steps *Defendant* took in reviewing, analyzing and remediating the Website. No mention is made of the vendor involved, or what standards that vendor uses, and nothing is said of possible compliance policies that were put in place, or compliance personnel specifically appointed responsibilities for ADA compliance, that would

assist this Court in assessing Defendant's overall sincerity in remaining compliant with the ADA, or the thoroughness of its remediation efforts. *See Farez-Espinoza v. Napolitano*, 2009 U.S. Dist. LEXIS 35392, at *14 (S.D.N.Y. Apr. 27, 2009)("A general disclaimer of intent to revive the allegedly unlawful conduct is insufficient in itself to overcome the defendant's heavy burden."); *see also Guglielmo v. Neb. Furniture Mart, Inc.*, 2020 U.S. Dist. LEXIS 238707, at *17-18 (S.D.N.Y. Dec. 18, 2020)(noting that the defendant's declaration provided a detailed account of the steps it took to remediate the website, including an audit performed, remediation of the website that was accomplished with very few instances of deficiencies afterward, and a complete redesign which will be a "central aspect" of the website going forward); *see also Kane v. Blueprint Test Preparation LLC*, No. CV 19-3024 (SJF) (AKT), 2020 U.S. Dist. LEXIS 155358, at *22-25 (E.D.N.Y. Aug. 24, 2020)(noting the comprehensive policy changes to provide close captioning as required under the ADA, including a revised employee handbook, employee training, and the creation of a new role, an ADA Coordinator, whose job it is to oversee continued implementation of ADA accommodations, along with documented examples of compliance); *see also Diaz v. Kroger Co.*, 2019 U.S. Dist. LEXIS 93177, at *8-9, *12 (S.D.N.Y. June 4, 2019)(finding ADA claim moot where the defendant provided an affidavit attesting that "(i) Defendant undertook compliance with the WCAG standards before the lawsuit was filed; (ii) the Website is today compliant with those standards; (iii) he personally confirmed that the specific barriers to access identified in Plaintiff's initial and amended complaints 'have been remedied and that no such barriers to access, as alleged, still exist with the website'; (iv) Defendant has no intention of undoing those changes or regressing to non-compliance with the ADA; and (v) Defendant commits 'to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.'"). Simply put, Mr. Kingett's Declaration provides none of the detail

surrounding Defendant's remediation of the Website for this Court to be absolutely certain that the challenged conduct cannot reasonably be expected to recur.

Additionally, Mr. Kingett's review provides nothing more than an overall assessment of the Website in its *current* state. Nothing is said of Defendant's commitment to *future* compliance. *See e.g. Diaz*, 2019 U.S. Dist. LEXIS 93177 at *11 (finding ADA claim moot where "Defendant removed those barriers, brought the Website into compliance with Plaintiff's preferred WCAG 2.0 standard, and *commits to monitoring technological developments in the future to ensure that visually-impaired individuals have equal access to the Website.*")(emphasis added). This is clearly inadequate when merely stating one's intent to remain committed to future compliance is not enough on its own to meet the high bar for mootness. *See Farez-Espinoza*, 2009 U.S. Dist. LEXIS 35392 at *14. Here, no statement is made at all concerning future compliance. Nor could it be, as Mr. Kingett is apparently just a visually impaired person chosen at random by Defendant to conduct an informal audit of the Website.

More glaring is the omission of WCAG 2.1 guidelines in Mr. Kingett's determination that the Website is now accessible to blind persons. *See cf. Diaz*, 2019 U.S. Dist. LEXIS 93177 at *11 (finding ADA claim moot where "Defendant removed those barriers [&] brought the Website into compliance with Plaintiff's preferred WCAG 2.0 standard"). WCAG guidelines are the standard industry metric for determining whether a given website is ADA compliant. *See also Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 902 n.1 (9th Cir. 2019)(" WCAG 2.0 guidelines have been widely adopted, including by federal agencies, which conform their public-facing, electronic content to WCAG 2.0 level A and level AA Success Criteria.")(citing 36 C.F.R. pt. 1194, app. A (2017)); *see also Panerese v. Shiekh Shoes, LLC*, No. 19-CV-4061 (JMA) (AYS), 2020 U.S. Dist. LEXIS 224369, at *4 (E.D.N.Y. Dec. 1, 2020)("The court looks to the Web Content Accessibility

Guidelines ('WCAG') 2.0 as the appropriate standard to determine whether a defendant's website is in compliance with the ADA's accessibility requirements.").  Failing to explain the standards that were used to determine ADA compliance cannot establish that Defendant has met its high burden to prove mootness.

Even aside from these deficiencies, all of which crater any prospects that Plaintiff's claims are moot, perhaps the most glaring omission is the missing date of remediation.  Mr. Kingett's Declaration fails to assert when the Website was remediated.  Moreover, his review of the Website on December 5, 2023, seventeen days before Defendant's motion was filed and a little less than two months after the Complaint was filed, *see* Dkt. Nos. 1, 10, fuels speculation that Defendant's remediation of the Website did not occur until *after* it was sued.

The voluntary cessation doctrine is a well-established exception to mootness.  *See Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994).  The doctrine "recognizes [] that 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'"  *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 669 (S.D.N.Y. 2014)(quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727, 184 L. Ed. 2d 553 (2013)).  "'Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'"  *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016)(quoting *Already, LLC*, 133 S. Ct. at 727); *see also Jobie O. v. Spitzer*, 2007 U.S. Dist. LEXIS 91460, at *13 (S.D.N.Y. Dec. 5, 2007)("The voluntary cessation exception to the mootness doctrine stems from the principle that a party should not be able to alter its behavior or practices temporarily in order to evade judicial review or manipulate the jurisdiction of the courts.").

Here, Defendant tries to avoid the catastrophic impacts that the voluntary cessation doctrine would otherwise have on its mootness arguments: Defendant simply decides to omit the relevant time period when its remediation efforts were undertaken. But this is a crucial omission that is fatal to any mootness argument, because it is impossible for Defendant to meet the high bar for mootness – which affirmatively requires Defendant to show "that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Gropper*, 12 F. Supp. 3d at 670 (quoting *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010)). Without the date in question, it cannot be determined whether Defendant remediated the Website in order to avoid the consequences of litigation, or had done so well before in a good faith effort to comply with the ADA. The burden is on Defendant to prove mootness, *see Farez-Espinoza*, 2009 U.S. Dist. LEXIS 35392 at *13-14 (noting that the "responsibility on the part of the defendant to overcome the exception to the mootness doctrine has been characterized as 'stringent' and a 'formidable burden.'"), and by dancing around the voluntary cessation doctrine, Defendant has failed to meet that burden here.

Despite its best efforts to conceal the proper date when the Website was remediated, Defendant still manages to tip its hand. Mr. Kingett did not conduct his review of the Website until almost two months after the Complaint had been filed, and less than three weeks before Defendant filed the instant motion. *See* Dkt. Nos. 1, 10. The timing of that review leads to the inevitable conclusion that Defendant remediated the Website in the same short timeframe, and specifically to get this action dismissed. This, Defendant cannot do.

"Courts have recognized that the suspicious timing of a party's voluntary cessation weighs against finding mootness … because such timing suggests a litigation-driven motivation, as

opposed to an authentic, durable commitment on the part of the defendant to mend its ways." *Logerfo v. Cty. of Nassau*, No. 17-cv-00010 (JMA) (AYS), 2021 U.S. Dist. LEXIS 269440, at *9-10 (E.D.N.Y. Mar. 11, 2021)(collecting cases); *see also Am. Council of the Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 248 (S.D.N.Y. 2020)("Here, the City's adoption of the new policy only when it was facing a formidable motion for summary judgment leaves it far from 'absolutely clear' that the City would not abandon its newly announced commitment with respect to APS were plaintiffs' claims denied as moot.").

Even though the actual date is uncertain (perhaps by design), the date of Mr. Kingett's review evokes the specter of the voluntary cessation doctrine inasmuch as it suggests that Defendant was purely motivated by a desire to avoid litigation. Defendant remediated the Website after it had been sued for the express purpose of avoiding liability under the ADA, not out of a sincere desire to be compliant with the ADA. This Court cannot be absolutely certain that the challenged conduct cannot reasonably be expected to recur. In all likelihood, given the implications of Mr. Kingett's review, it *will* recur again, putting this case squarely under the protections of the voluntary cessation doctrine. Finding mootness here would allow Defendant to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *De La Rosa*, 175 F. Supp. 3d at 201.

## B.  PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE WEBSITE AND HER INTEREST IN RETURNING ESTABLISH INJURY-IN-FACT

### i. Article III Standing in the Context of the ADA

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. *See Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016). In order to have standing to sue in federal court, "(1) the

plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009). The injury-in-fact must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)(quoting *Lujan*, 504 U.S. at 560 n.1). "To be 'concrete' an injury 'must actually exist': the injury must be 'real' and not 'abstract.'" *Laufer v. Laxmi & Sons, LLC*, No. 1:19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752, at *3-4 (N.D.N.Y. Nov. 19, 2020)(quoting *Spokeo*, 136 S. Ct. at 1548).

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021)(citing cases).

### ii. Plaintiff Has Adequately Alleged Past Injury

Plaintiff has adequately alleged past injury under *Kreisler* when she alleges that she "encountered barriers that denied the full and equal access to Defendant's online goods, content,

and services." *See* Dkt. # 1, ❡ 20.  Those barriers include Plaintiff's inability to purchase the Women's Line Scout Lace-to-Toe boots, "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," "a host of broken links" which left Plaintiff with no ability "to navigate or otherwise determine where one is on the website once a broken link is encountered."  *See Id.* at ❡❡ 25, 26, 28, 29, 42, 43, 44.  "These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do."  *Id.* at ❡ 45.

These allegations are sufficient to survive a 12(b)(1) motion.  *See Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff explained in a supplemental affidavit that "1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019)(past injury established where plaintiff alleged that the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software."); *see also Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022)(plaintiff adequately alleged past injury by identifying access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *see also Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *6 (S.D.N.Y. Nov. 22,

2022)(allegations that plaintiff encountered various access barriers sufficient to establish past injury, including that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.").

Defendant briefly contests these allegations in the introduction to its memorandum of law, where Defendant asserts that these allegations are "vague." While the argument is undeveloped, Plaintiff's allegations are sufficient to survive the low pleading threshold under Rule 8. *See Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913, at *7 (S.D.N.Y. Aug. 14, 2023)("Further detail on which locations on the website are out of compliance with the applicable statutes is not necessary at this stage because a complaint need not provide 'detailed factual allegations' to survive a motion to dismiss.")(quoting *Young v. Metro. Learning Inst., Inc.*, No. 22-CV-1722 (JPO), 2023 U.S. Dist. LEXIS 23206, at *6 (S.D.N.Y. Feb. 10, 2023); *see also Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021)(concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury); *see also Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022)(past injury established where plaintiff alleged that he encountered "certain difficulties" in navigating the website and specified three different dates for accessing the website).

And this is true even if Plaintiff had not alleged that he was completely prevented from using the Website. *See Brown v. Mermaid Plaza Assocs. LLC*, No. 13-cv-00760 (AMD) (CLP), 2018 U.S. Dist. LEXIS 132364, at *18 (E.D.N.Y. Mar. 8, 2018)("Under the ADA, the barrier

'need only interfere with the plaintiffs full and equal enjoyment of the facility'—'it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way.'")(quoting *Feltenstein*, 254 F. Supp. 3d at 655). "Courts have thus found that, even where the physical or other barriers in question have not entirely prevented disabled plaintiffs from visiting or receiving services offered at a public accommodation, such that the plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still have standing to sue under the ADA, when the barriers render their use of the facility more difficult, burdensome, or dangerous than it would be for individuals who are not disabled." *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at *13-14 (S.D.N.Y. July 5, 2023)(citation omitted)(cleaned up).

Therefore, not only are Plaintiff's "generalized" allegations that he encountered broken hyperlinks, hidden webpage elements, unannounced pop-up windows *etc.* sufficient to establish past injury under Article III, Plaintiff has gone one step further and enumerated the specific product she was prevented from purchasing as a result of those access barriers, the Women's Line Scout Lace-to-Toe boots.

### iii. **Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue**

Plaintiff has also alleged the reasonable inference that discriminatory treatment will continue. Specifically, Plaintiff has alleged that she visited the Website on two separate occasions, September 28, 2023 and September 30, 2023, and that during her visits she encountered access barriers that Defendant has failed to rectify. *See* Dkt. # 1, ¶¶ 20, 39, 42, 45, 47. Those barriers include "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed

solely with a mouse," as well as "a host of broken links."  *See Id.* at ¶¶ 43, 44.  Plaintiff has also alleged that the access barriers deter her from returning to the Website.  *See Id.* at ¶ 48.

Additionally, Plaintiff has established that she is interested in visiting the Website in the future, *if and when the Website becomes remediated*, because she wants to purchase the "Women's Line Scout Lace-to-Toe" boots.  *See* Dkt. # 1, ¶ 30.  Plaintiff is interested in this specific product because she is "looking for leather boots for the cold season," is interested in "handcrafted boots from natural materials, as her previous pairs of the same type were very comfortable and durable," and finds the collection of footwear offered for sale on the Website specifically appealing because the Website offers "a rich collection of work boots, hiking boots, fire boots, made from fine leather and hardwoods" and Defendant "is renowned for craftsmanship, durability, and attention to detail." *See Id.* at ¶¶ 21-24.

These allegations are sufficient to establish the second *Kreisler* element.  *See Tavarez*, 641 F. Supp. 3d at 82 ("reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022)(reasonable to infer discriminatory treatment would continue based on allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured," noting that the plaintiff "even makes note of his particular interest in pistachio nuts."); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *16 (plaintiff has established that discriminatory treatment will continue by allegations that "[he] remains unable to, but strongly desires and intends to purchase the Organic Honey Sunflower Butter from Defendant's website,"

and that he "'browsed and attempted to transact business on Defendant's website' multiple times from April 2022 to August 2022, but the Website still contains barriers.").

Defendant argues that it is not reasonable to infer that discriminatory treatment will continue because the Website is accessible. If taken literally and broadly applied as a general rule, Defendant's arguments would introduce a *de facto* mootness requirement into the Article III standing analysis under *Kreisler*. This is highly improper. "Standing and mootness are interrelated concepts, but are not to be confused. Standing relates to whether a litigant has a personal stake at the commencement of an action, while mootness ensures that the litigant's interest exists 'throughout the life of the lawsuit.'" *Samele v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018)(quoting *Comer v. Cisneros*, 37 F. 3d 775, 797-98 (2d Cir. 2994)). Doctrinally then, Defendant's arguments conflate two very distinct concepts under the law. By doing so, Defendant evades important procedural protections under the doctrine of mootness, which places the burden squarely on the defendant to prove that a case has been mooted by subsequent actions. *Compare Farez-Espinoza*, 2009 U.S. Dist. LEXIS 35392 at *13-14 ("This responsibility on the part of the defendant to overcome the exception to the mootness doctrine has been characterized as 'stringent' and a 'formidable burden.'") *with Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022)("At all stages of litigation, the party *invoking* federal jurisdiction bears the burden of establishing the elements of Article III standing.")(emphasis added).

Therefore, Defendant's attempts to bootstrap mootness arguments onto the Article III standing analysis under *Kreisler* should be ignored. If it is to be countenanced by this Court, then Defendant's failure to overcome the voluntary cessation exception to the mootness doctrine, as established above, would suffice to show that it is reasonable to infer that discriminatory treatment

will continue because, although perhaps currently remedied, the Court cannot be absolutely certain that those barriers will not reemerge in the future.

### iv. **Plaintiff Has Established Intent to Return, the Third and Final *Kreisler* Element**

The Complaint establishes that Plaintiff had previously visited the Website on September 28, 2023 and September 30, 2023.  Dkt. # 1, ⁋ 20.  The Complaint also establishes that Plaintiff is interested in visiting the Website in the future, *if and when the Website becomes remediated*, because she wants to purchase the "Women's Line Scout Lace-to-Toe" boots.  *See* Dkt. # 1, ⁋ 30. Plaintiff is interested in purchasing these boots because she is "looking for leather boots for the cold season," wants "handcrafted boots from natural materials, as her previous pairs of the same type were very comfortable and durable," and finds the collection of footwear offered for sale on the Website appealing because the Website offers "a rich collection of work boots, hiking boots, fire boots, made from fine leather and hardwoods" and Defendant "is renowned for craftsmanship, durability, and attention to detail."  *See Id.* at ⁋⁋ 21-24.

These allegations are consistent with caselaw that has found intent to return in the context of ADA website claims.  *See Tavarez*, 641 F. Supp. 3d at 83 (finding that the amended complaint sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of Defendant's Almond Mini Bars that he finds attractive."); *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5 (plaintiff adequately pleaded intent to return where plaintiff alleged that he "unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured," where the plaintiff "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S.

17

Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients."); *see also Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023)(finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *8-9 (finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20 (finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *see also Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023)(finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccanoil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Focusing on a single line in the Complaint, *see* Dkt. # 1, ¶ 46, Defendant argues that Plaintiff's allegation that she "intends to visit the website in the near future if it is made accessible"

is insufficient to establish intent to return.  Defendant cites to *Calcano*, 36 F.4th at 75 ("The central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury.").  Plaintiff has done far more than simply made a bald allegation about returning to the Website, but has established the product she is interested in purchasing and why, and gone further to explain why the Website's offerings are particularly appealing to her.  The totality of all relevant facts, when considering the *entire* Complaint, supports standing.

Defendant also makes various different interrelated arguments to the effect that Plaintiff has not alleged why she is interested in the "Women's Line Scout Lace-to-Toe" boots; that she has not "articulated" her interest in the boots; and that Plaintiff has not alleged the factual basis for her interest.  These arguments are belied by the allegations of the Complaint.  Plaintiff is interested in purchasing the "Women's Line Scout Lace-to-Toe" boots because she is "looking for leather boots for the cold season" and is interested in "handcrafted boots from natural materials, as her previous pairs of the same type were very comfortable and durable."  *See* Dkt. # 1, ⁋ 22.  Plaintiff further explains the reasons for her interest in the Website in particular.  *Id.* at ⁋ 24.  Under the totality of relevant facts, it is clear that Plaintiff has alleged why she is interested in the "Women's Line Scout Lace-to-Toe" boots.  Her allegations are more than just bald statements to that effect.

Defendant nevertheless takes issue with these allegations and suggests that the basis for her interest in "handmade, high quality" boots – boots that, Plaintiff alleges, are suitable for cold weather and similar to footwear she has worn in the past – *is not differentiated enough*.  Defendant asks why Plaintiff could not seek out similar handcrafted boots elsewhere.  But if courts can find intent to return based on a plaintiff's "particular interest in pistachio nuts," *see Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *7;  a plaintiff's interest in "honeyed butter"

where the plaintiff alleges he "is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," *see Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20; a plaintiff's interest in stomach repair supplements for her cousin, *see Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *8-9; a plaintiff's interest in "Morroccanoil Dry Body Oil," where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands" and "wants to add [the Morrocanoil Dry Body Oil] to her collection," *see Maddy*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 at *13-14; a plaintiff's interest in "in Defendant's products because they are free of chemicals and other unnatural ingredients," where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies," *see Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *5; and a plaintiff's alleged interest in "the specific product Plaintiff allegedly seeks to buy," where the plaintiff alleges nothing more than "his habit of consuming chocolate, and characteristics of Defendant's Almond Mini Bars that he finds attractive," *see Tavarez*, 641 F. Supp. 3d at 83, there is no reason why this Court cannot do the same here. In terms of specificity, Plaintiff's allegations are nearly identical to these in that they identify the product, "Women's Line Scout Lace-to-Toe" boots, specify the reasons for wanting the product (high quality, handcrafted for seasonal cold weather), and relate Plaintiff's past shopping behavior to the product that ties it all together (similar to past boots worn, which Plaintiff found comfortable). *See* Dkt. # 1, ¶¶ 22-23.

Defendant's insistence on even more detail – based on a seemingly endless of array of personal-life details that seem better suited to the vows of marriage than an online retail purchase – belies the realities of the online marketplace. Under Defendant's proposed standard, *no* plaintiff

would ever be able to establish standing based on a desire to purchase something online. *Sanchez*, *Davis*, *Chalas*, *Maddy*, *Angeles* and *Tavarez* directly refute that contention.

Moreover, Plaintiff's intent to return is plausible considering the two prior dates Plaintiff visited the Website. *See Tavarez*, 641 F. Supp. 3d at 83 (finding intent to return based, in part, on three prior dates plaintiff allegedly visited the website); *see also Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-19 (finding intent to return based, in part, on allegations of visiting the Website on five prior occasions); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4 (finding intent to return, in part, where "Plaintiff provides approximate date of when she attempted to access the website, *i.e.*, sometime in October of 2020.").

In this respect, *Winegard v. Golftec Intellectual Prop. LLC*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 (E.D.N.Y. May 26, 2023), which Defendant relies on, is distinguishable. That case held that the plaintiff failed to plausibly allege intent to return to the defendant's website for the purpose of viewing golf instructional videos because he failed to allege any background facts that would make his interest in the website plausible, such as past lessons taken, courses played, *etc. See Winegard*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 at *7-8. The plaintiff, however, alleged only a single date that he had previously visited the Website, and the court struggled to draw any favorable inferences of other past visits based on vague and conclusory allegations to that effect. *See Winegard*, No. 23-cv-1244 (BMC), 2023 U.S. Dist. LEXIS 92840 at *7 (noting that the plaintiff "only visited defendants' website on February 6, ten days before filing this lawsuit, and the "claim that he also visited on 'subsequent days' is not particularized enough to be plausible.").

Defendant also relies on *Dawkins v. Schott NYC Corp.*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 (E.D.N.Y. Sep. 26, 2023) to argue that Plaintiff's allegations are

insufficient to cross the plausibility threshold.  In *Dawkins*, the court held that the plaintiff's averments that he was interested in a "classic perfecto" jacket for its iconic look failed to "'nudge' the Complaint 'across the line from conceivable to plausible'" because he did not allege "the genesis of his sudden need or want" or make any allegations concerning the uniqueness of the product or his attempts to find suitable alternatives "at a comparable price point."  *Dawkins*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *8-9.  This case is distinguishable because Plaintiff has articulated the basis for her "sudden need or want."  She is searching for a pair of handcrafted leather boots similar to a pair of boots made from natural materials she had worn previously and found to be "very comfortable and durable."  *See* Dkt. # 1, ₱ 22.

Moreover, Defendant's assertions that Plaintiff's allegations in this respect are no different from the ones in *Dawkins*, which the court found merely to be "value assertions," is a mischaracterization of that case.  The *Dawkins* court came to that conclusion because the plaintiff had opined about the broad-based appeal of the "classic perfecto jacket" in American culture, but without any allegations to that effect.  No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *9 ("[T]hese statements are not factual allegations about Plaintiff's own experiences or intent, but are allegations about the theoretical desirability of Defendant's products by the public in general. A plaintiff cannot manufacture standing through such generalized, non-concrete allegations."). Here, Plaintiff has alleged the basis for her interest in the "Women's Line Scout Lace-to-Toe" boots.

Defendant's attempt to turn the reasoning of *Dawkins* into a bright line rule requiring all ADA plaintiffs to allege with specificity that they had tried and failed to find suitable alternatives at a comparable price point does not withstand scrutiny.  *Dawkins* only came to that conclusion, much like Judge Cogan did in *Winegard* when musing about allegations that could possibly fill

the void, in an attempt to explain what allegations might satisfy the Article III threshold.  *See Dawkins*, No. 22-CV-3617 (PKC) (TAM), 2023 U.S. Dist. LEXIS 171967 at *8-9; *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants.")(emphasis in original).  These alternatives are not a laundry list of requirements offered in the conjunctive, but suggested as possible pathways to establish standing.  Defendant's bright-line rulemaking would turn these alternative ways of satisfying Article III into a "choose your own adventure" playbook where any district court might dismiss a claim that had not met these exceedingly finite criteria.  Article III is not so strict.

Defendant also argues that Plaintiff's allegations cannot be credited because she is a serial litigant, and relies heavily on *Calcano* for this assertion.  But *Calcano* is distinguishable.  The Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the Circuit Court struggled with the veracity of the allegations.  *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food.").  Coupled with the boilerplate nature of the complaints and the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing.  *See* 36 F.4th at 76-77.

Courts in this jurisdiction have distinguished *Calcano* precisely along these lines.  *See Davis*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's

reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions"'" of intent to return to
[d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning
intent to return are significantly more detailed … .")(quoting *Calcano*, 36 F.4th at 77-78); *see also
Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide
*any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of
such visits, which items they purchased, or why they wanted to purchase certain items from the
defendants.")(emphasis in original)(quoting *Calcano*, 36 F.4th at 76-77).

Defendant points to no error in the Complaint, or any of the other ADA claims Plaintiff
has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist,
they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in
*Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff
firms, whether they bring personal injury claims or intellectual property claims such as copyright
infringement – Defendant has failed to point to any other aspect of *Calcano* that would call into
question the veracity of Plaintiff's allegations.

Moreover, the fact that serial plaintiffs file dozens of these complaints reflects the
widespread discrimination that the visually impaired face on a daily basis and the ubiquitous nature
of the internet itself. *See Maddy*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 at *15-
16 (filing over 70 complaints did not make the plaintiff's intent to return implausible, reasoning,
"It is not uncommon for people to use and attempt to access multiple websites a day—whether
looking for information or to buy something. And, it is not implausible that many such websites
have issues that make them inaccessible to visually impaired persons[,]" thus "reflect[ing] the
systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, No.
22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 at *10-11 ("The fact that Plaintiff has filed

nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites.").

### C.  **PLAINTIFF'S NYCHRL CLAIMS SURVIVE**

Even if Plaintiff's ADA claims are dismissed, Plaintiff's NYCHRL claims are judged by a different standard and survive.  This was the conclusion that the Supreme Court of New York recently came to when it stated,

> It is undisputed that the NYCHRL's pleading standards are materially looser than the trans-substantive plausibility standard of the Federal Rules of Civil Procedure— or, for that matter, the CPLR's notice-pleading standard for claims under the NYSHRL. (*See Williams v New York City Hous. Auth.*, 61 AD3d 62, 65-69, 872 N.Y.S.2d 27 [1st Dept 2009]; *Vig v NY Hairspray Co., L.P.*, 67 AD3d 140, 145, 885 N.Y.S.2d 74 [1st Dept 2009].) As a result, allegations that would be insufficient to state a federal claim might well be enough to state a cause of action under the NYCHRL. This difference defeats defendants' estoppel argument.

*Pustilnik v. Battery Park City Auth.*, 2021 NY Slip Op 21087, 71 Misc. 3d 1058, 1069, 147 N.Y.S.3d 357 (Sup. Ct.); *see also Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U), at *6-7 (Sup. Ct.).

### V.    **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.

Dated:  January 26, 2024                    Respectfully Submitted,

                                            **STEIN SAKS, PLLC**

                                            */s/  Kenneth Willard*

                                            Kenneth Willard, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/ Kenneth Willard_____

Kenneth Willard, Esq.